(109 So. 913)

No. 27980.

**J. J. CLARKE CO., Limited, v. PETIVAN et al.**

**In re J. J. CLARKE CO., Limited.**

(Oct. 5, 1926.)

*(Syllabus by Editorial Staff.)*

1. Mechanics' liens ⬾132(13)—**Where owner of building recorded contract and notice of completion and acceptance but failed to take contractor's bond, materialmen may assert lien and privilege by recording them within 45 days after recorded acceptance (Act No. 262 of 1916; Act No. 229 of 1916; Act No. 134 of 1906).**

Owner of building, who recorded written contract with contractor and notice of completion and acceptance of building, *held* to elect to come under Act No. 262 of 1916, so that materialmen may assert lien and privilege against property by recording them within 45 days after recorded acceptance, though owner failed to take and record contractor's bond, Act No. 229 of 1916 and Act No. 134 of 1906 being inapplicable.

2. Mechanics' liens ⬾3.

Acts No. 229 and No. 262 of 1916, relative to mechanics' liens, *held* not in conflict.

3. Appeal and error ⬾170(2).

Defendant's contention on appeal by plaintiff that statute is invalid; made for first time in Supreme Court and made only in brief, will not be considered.

Action by the J. J. Clarke Company, Limited, against A. J. Petivan and others. Judgment for defendants was affirmed by the Court of Appeal, and plaintiff applies for certiorari or writ of review. Reversed and rendered.

Dart & Dart and Leo L. Dubourg, all of New Orleans, for applicant.

Charles Louque, of New Orleans, for respondent Ardill.

THOMPSON, J. This is a suit against the owner and contractor for the price of materials furnished to the contractor and used by him in constructing a building for the owner.

The contractor made no defense, and judgment was rendered against him by default.

The owner of the building alleged, as a defense, that no contractual relations existed between her and the furnisher of materials, and hence she was not bound personally for such materials.

She further alleged that the evidence of plaintiff's claim was not recorded until more than 45 days after the building was completed and accepted by her, and hence plaintiff had no privilege on her property.

There was judgment of the district court rejecting plaintiff's demand against the owner, and that judgment was affirmed by the Court of Appeal.

It appears that the building contract was entered into between the owner and contractor on July 11, 1921.

The contract was in writing, fixed the price to be paid the contractor at $5,400, and the contract was duly recorded. The owner, however, failed to obtain a bond from the contractor for the protection of the laborers and furnishers of material. The building was completed and accepted by the owner on or before October 1, 1921, and within 15 days thereafter the owner settled with the contractor in full.

On January 3, 1922, the owner made and caused to be recorded in the mortgage office an affidavit in which she declared "that the contract has been completed, and the work has this day been accepted, and notice given to the recorder of mortgages of the parish of Orleans of the acceptance and record the same in his office, according to law."

Following the record of notice of acceptance, the plaintiff filed and caused to be recorded in the mortgage office proper evidence of its claim and served the same upon the owner. This record was made on January 14, 1922.

[1] The question presented is whether, in these circumstances, the liability of the own-

er and the rights of the furnisher of material are to be determined by Act No. 229 of 1916, or by Act No. 262 of the same year, both of said acts being approved on the same day.

If the rights of the parties are to be regulated by Act No. 229, then the plaintiff has no privilege for the materials furnished, since the claim was not recorded within 45 days after the completion of the building and its acceptance by the owner, which acceptance, as we have seen, was on October 1, 1921, and the record of plaintiff's claim was not made until January 14, 1922. The acceptance, under Act No. 229 of 1916, was not required to be in writing, and no notice of such acceptance was required to be registered.

On the other hand, if Act No. 262 is controlling, then the plaintiff is entitled to recover because that act requires a notice by the owner of his acceptance to be recorded in the mortgage office and the privilege of the furnisher of materials, which is created by registry of the contract, is preserved, if recorded within 45 days after the registry of the notice of acceptance.

The Court of Appeal held that Act No. 229 applies to all building contracts where the parties have not complied with all of the provisions and requirements of Act No. 262 of 1916.

As a basis for the decision, the Court of Appeal cited a number of its own decisions and the following decisions of this court: Glass & Mirror Works v. Irwin, 126 La. 555, 52 So. 765; Musey v. Prater, 147 La. 71, 84 So. 498; Gleissner v. Hughes, 153 La. 133, 95 So. 529; Rose v. Eunice Electric Theatre, 154 La. 81, 97 So. 322.

In the first-cited case of this court, it appears that the theory on which the owner was declared not liable personally was that, under Act No. 134 of 1906, the owner was only bound "to the same extent as the surety would have been," and the surety was not bound except as to claims duly recorded within the legal delay.

Under the act of 1906 with which the court was then dealing, lien claimants were required not only to record sworn statements of their accounts, but to file duplicates with the owner within 45 days after the completion of the building. The court found that the claimants had not complied with the requirement, and hence correctly held that the claimants had no lien, and, being without right against the surety if one had been required by the owner, no liability could be attached to the owner.

In the Musey Case the materialmen had not served attested accounts on the owner, but had filed their accounts with the recorder of mortgages.

The issue presented was whether the accounts should have been served on the owner.

The contract in that case had not been recorded, and the bond was not taken in favor of the materialmen and laborers, and, moreover, was not recorded.

For these reasons the court, on rehearing, held that the owner could not claim the benefits of Act No. 262. The court said:

"These two acts, when construed together, would seem to make it unnecessary for the materialmen, * * * etc., in order to preserve their liens and privileges on the property of the owner, to file sworn statements with the owner.

"We are of the opinion that Act No. 229 refers to all building contracts, regardless of amount, whether verbal or in writing, where no bond, or defective bond, is given by the contractor, and the contract and bond are not recorded in the manner provided for in Act No. 262; and, as none of these things were done by plaintiff in this cause, the materialmen, defendants, have the right to assert their liens and privileges given them, under Act No. 229."

The court in that case found that, as the owner had not complied with any of the provisions of Act No. 262, he could not claim the benefit of any of the provisions of that act, and, as the materialmen had complied with Act No. 229, they were entitled to the privileges claimed under said act, notwithstanding

such materialmen had not complied with Act No. 262 by filing their claims with the owner.

In the Gleissner Case, the building was constructed by the owner under an agreement with a superintendent on a cost plus basis. The principal issue involved was as to whether the claims had been recorded in time to take priority over mortgages existing on the property.

The court held that, under Act No. 229, the filing and registry of the claim for materials was timely, if made within 45 days from the last delivery of materials. The case was clearly governed by Act No. 229, for the building was constructed by the owner through a superintendent.

The provisions of Act No. 262 were not at issue and were not even referred to in either the original opinion or the one on rehearing.

In the last case cited, the theater company undertook the work of constructing a brick building through a firm of architects who employed a purchasing agent.

The foreman of the work made a contract with Rose to furnish the material and labor to install the plumbing, heating, and electrical work for the building.

Rose complied with his contract and, before the final acceptance of the work, caused to be recorded an affidavit of the balance due him, and claimed a privilege on the building and lots.

Rose brought suit, and the question at issue was whether he had a privilege and whether that privilege outranked a prior mortgage.

The court held that as Rose's privilege was recorded within 45 days from the acceptance of the work done by him, and as the owner did not elect to proceed under Act No. 262 in erecting the building by complying with the provisions of that act, the rights of the parties were governed by Act No. 229.

In the course of the opinion, after reciting the conditions and requirements of Act No. 262, the court said:

"If the owner complies with these conditions, the act is put into operation and works to his benefit by enabling him, under certain conditions, to rid his property of the privileges recorded against it before their payment, and to throw the claimants on the bond.

"If he elects not to come under it, or fails to comply with the conditions imposed upon him, or does the work in such a manner as not to come within its provisions, those with whom the owner has contracted, verbally or in writing, and those with whom the contractor has contracted, may resort to Act No. 229. So viewed, the two acts are not conflicting. Each operates within its own sphere."

These cases were decided on the facts of each case, and those facts were in essential respects different from the facts in the instant case.

In none of the cases cited did the court hold or intend to hold that in all building contracts where the owner has complied with some but not all of the requirements of Act No. 262, the parties furnishing material would be governed entirely by Act No. 229, where such claimants had themselves complied with Act No. 262 in registering their claims.

To so hold would be to write out of Act No. 262 the provision that:

"If the owner fails to exact bond, or if he fails to cause same to be recorded in the office of the recorder of mortgages in the manner or in the time hereinabove provided the owner shall be in default and shall be liable to the same extent as the surety would have been. and all * * * furnishers of materials shall have a first privilege on said building or improvement and grounds to secure the amount due them when their claims are recorded, as herein provided."

And, furthermore, such a holding would give to Act No. 229 an effect which was never intended by the Legislature, for in that act it is expressly declared that its provisions shall not affect in any manner the provisions of Act No. 262.

When properly analyzed, there is no conflict and no confusion to be found in the ju-

risprudence since the adoption of Acts Nos. 229 and 262 of 1916.

[2] As said in the Rose Case, the two acts are not in conflict, each operating within its own sphere. And, as said in the Musey Case, where the owner has complied with none of the provisions of Act No. 262, the materialmen have the right to assert their liens given them by Act No. 229.

The declared purpose of Act No. 262 was to require owners to secure bonds for the protection of all parties interested in the contract and as their interest may appear; and, in default of his doing so, the owner is to stand towards all claimants who have properly registered their claims in the place and stead of the defaulting contractor, and is bound to the same extent as the surety would have been bound, if one had been required.

In the instant case, the owner entered into a written contract with the contractor. The contract was duly recorded. The contract price exceeded $500. A notice of the acceptance of the building was recorded, and in less than 15 days thereafter the plaintiff caused the evidence of its claim to be properly recorded and served on the owner. The owner therefore elected to come under Act No. 262 by complying with two of the essential requirements of that act. The only requirement omitted was in not taking and recording a bond from the contractor. The plaintiff did all that it was required to do, under the act, to preserve its rights against the owner and its privilege upon the property.

If a bond had been required and recorded, could there be any doubt that the surety on the bond would have been liable to the plaintiff? That being true, then for what reason is the owner not to be held liable, when the law under which the contract was written and recorded, and under which the notice of acceptance was recorded, expressly declares that where the bond is not exacted and recorded the owner shall be in default and bound to the same extent as such surety, if taken, would have been?

Why read this provision out of Act No. 262 and require the materialmen to comply with Act No. 229, when they have done what is required of them, under Act No. 262?

Act No. 262 declares that when the building contract is in writing and recorded such recordation shall create a lien on the building and grounds in favor of the parties named, which includes furnishers of material, and this lien is preserved when the materialmen file and record their claims within 45 days after the registry by the owner of his acceptance of the work, and, until such acceptance is recorded, the delay to file privileges does not run.

Our conclusion is that the owner elected to come under Act No. 262 by taking a written contract and causing the same to be recorded and by filing and recording a notice of the completion and acceptance of the building; that the plaintiffs were in time to preserve their privilege by recording the same in less than 45 days after such written and recorded acceptance; that the failure of the owner, in these circumstances, to take and record a bond imposed upon her the same liability as would have been incurred by the surety, if one had been taken. The plaintiffs having complied with the terms of Act No. 262, Act No. 229 has no application.

[3] The learned counsel for defendant has attacked Act No. 262 as being unconstitutional on the ground that the body of the act is broader than its title, the title being simply an act providing for the bond to be given for the protection of the owner, whereas the body of the act provides for the liability of the owner. Further, that the act deprives the owner of his property without due process of law and of the liberty of contract, in violation of the Fourteenth Amendment to the federal Constitution.

No such defense was made in either the

district court or the Court of Appeal, and is made here for the first time and only in counsel's brief. We must decline to pass upon the question so presented, since the case is only before us for review on application of the plaintiffs.

For the reasons assigned, the judgment of the Court of Appeal, as also that of the district court, is reversed and set aside, and it is now ordered that the plaintiff, J. J. Clarke & Co., have judgment against Miss Marguerite Ardill for the sum of $532.39 with 5 per cent. per annum interest, from January 14, 1922, until paid, and that plaintiffs' lien and privilege be recognized upon and enforced against the property described in plaintiffs' petition. The defendant to pay all costs.